| | |
|---|---|
| Name | JOHN RYAN |
| Street Address | PO BOX 1870 |
| City and County | PALM SPRINGS, RIVERSIDE |
| State and Zip Code | CALIFORNIA, 92263 |
| Telephone Number | 760-567-4695 |



FILED
CLERK, U.S. DISTRICT COURT

MAR 29 2021

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

**FEE PAID**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN RYAN

PO BOX 1870

PALM SPRINGS, CA. 92263

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

STILLWATER INSURANCE

PROGRESSIVE INSURANCE

AEGIS INSURANCE

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case Alleging Breach of Contract**
(28 U.S.C. § 1332; Diversity of Citizenship)



EDCV21-00541-JGB(SPx)

Case No. _____

*(to be filled in by the Clerk's Office)*

Jury Trial:    ☑ Yes    ☐ No
*(check one)*

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | AEGIS INSURANCE |
| Street Address | 11452 EL CAMINO REAL #250 |
| City and County | SAN DIEGO, SAN DIEGO |
| State and Zip Code | CALIFORNIA, 92130 |
| Telephone Number | |
| E-mail Address | |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | STILLWATER INSURANCE GROUP |
| Job or Title (if known) | 12500 "I" STREET |
| Street Address | |
| City and County | OMAHA, DOUGLAS |
| State and Zip Code | NEBRASKA, 68137 |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | PROGRESSIVE INSURANCE |
| Job or Title (if known) | |
| Street Address | 6300 WILSON MILLS ROAD |
| City and County | MAYFIELD VILLAGE, CAYAHOGA |

State and Zip Code   OHIO 44143

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. 3

   Name _____

   Job or Title _____
   (if known)

   Street Address _____

   City and County _____

   State and Zip Code _____

   Telephone Number _____

   E-mail Address _____
   (if known)

Defendant No. 4

   Name _____

   Job or Title _____
   (if known)

   Street Address _____

   City and County _____

   State and Zip Code _____

   Telephone Number _____

   E-mail Address _____
   (if known)

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Under 28 U.S.C.
§ 1332, federal courts may hear cases in which a citizen of one State sues a citizen of
another State or nation and the amount at stake is more than $75,000.  In that kind of
case, called a diversity of citizenship case, no defendant may be a citizen of the same
State as any plaintiff.  Explain how these jurisdictional requirements have been met.

**A.    The Plaintiff(s)**

1.    If the plaintiff is an individual

The plaintiff, *(name)* JOHN RYAN_____, is a citizen of the State of *(name)* CALIFORNIA_____.

2.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

**B.    The Defendant(s)**

1.    If the defendant is an individual

The defendant, *(name)* Aegis & Progressive Insurance_, is a citizen of the State of *(name)* California & Ohio respectively. *Or* is a citizen of *(foreign nation)* _____.

2.    If the defendant is a corporation

The defendant, *(name)* STILLWATER INSURANCE, is incorporated under the laws of the State of *(name)* ___NEBRASKA_____, and has its principal place of business in the State of *(name)* _____. *Or* is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

**C.    The Amount in Controversy**

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

PLEASE REVIEW EXHIBITS.

_____

_____

### III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

The plaintiff, *(name)* JOHN RYAN____, and the defendant, *(name)* AEGIS_____, made an agreement or contract on *(date)* _____.  The agreement or contract was *(oral or written)* _____.  Under that agreement or contract, the parties were required to *(specify what the agreement or contract required each party to do)*

PLEASE REVIEW EXHIBITS._____

_____

_____

The defendant failed to comply because *(specify what the defendant did or failed to do that failed to comply with what the agreement or contract required)*

PLEASE REVIEW EXHIBITS_____

_____

_____

The plaintiff has complied with the plaintiff's obligations under the contract.

### IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to

actual or punitive money damages.

T.B.D

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 03-24        , 2021.

Signature of Plaintiff
Printed Name of Plaintiff    JOHN RYAN

*DRIVE°Insurance*

## PRODUCER'S AGREEMENT

**This Agreement** is made by and between the insurance producer identified in Article XII (hereinafter, "you" and "your"), and the insurance companies identified in Article XII (collectively, "we," "us," and "our"). The parties hereby agree as follows:

### Article I.    Definitions
A.   "Effective Date" means the date that this Agreement becomes effective, as set forth in Article XII.
B.   "Expiration Information" means business records and information originating with you regarding any applicant or insured under a Policy or Renewal, including, without limitation, the date of expiration and policy limits of any Policy or Renewal.
C.   "Policy" means any insurance contract issued in the Territory by us pursuant to this Agreement.
D.   "Renewal" means any insurance contract issued in the Territory by us or any of our corporate affiliates that:
  1.   is effective within sixty (60) days after the expiration date of any Policy or Renewal thereof;
  2.   provides substantially similar coverage as any such Policy or Renewal;
  3.   is issued to the same named insured as such Policy or Renewal; and
  4.   is issued using your Expiration Information.
  A Renewal shall include any insurance contract issued in the Territory by us pursuant to any previous agreement between you and us with respect to the subject matter hereof, provided that such insurance contract is renewed after the Effective Date of this Agreement.
E.   "Territory" means the jurisdiction(s) where you are licensed and we make insurance products available to you, as listed in Article XII. Subject to your licensing status, we may add jurisdictions with written notice to you.
F.   "Trademark(s)" means any and all of our company names, trade names, domain names, slogans, tag lines, logos, trademarks or service marks.
G.   "Underwriting Requirements" means instructions that we provide or make available to you in written or electronic format, including, without limitation, insurance applications, product or underwriting guides, rates and rating software, processes and procedures, commission schedules, or premium payment plans.

### Article II.    Authority
A.   Subject to and in accordance with this Agreement and the Underwriting Requirements, you have the authority in the Territory to solicit, provide quotes, receive applications, bind coverage, and collect and provide receipts for premiums for authorized insurance products specified in Article XII.
B.   You have no authority to, and agree that you will not:
  1.   submit to us any application for insurance:
    a.   that you know or have reason to know is false, inaccurate or misleading;
    b.   with a requested effective date and time prior to the date and time that you receive a request for such coverage and an acceptable down payment, a complete quote from you is registered electronically in our quoting systems, and you meet any and all additional conditions specified in the Underwriting Requirements; or
    c.   for any class of risk not specified in the Underwriting Requirements;
  2.   adjust or settle any claim under a Policy or Renewal; or
  3.   collect from any person who is or has applied to be insured with us any fees or charges in connection with the performance of this Agreement that are in addition to those specified in the application for a Policy or declarations page for a Renewal, except in compliance with all applicable laws. You are solely responsible for any legally required disclosure of such fees and charges to applicants and insureds. You are not authorized to, and nothing in this Agreement shall be construed as, authorizing the imposition or collection of any such fees or charges on our behalf.
C.   Without our prior written consent, you have no authority to, and agree that you will not:
  1.   grant binding authority to, or accept business subject to this Agreement from, anyone other than your duly licensed and appointed employees or duly licensed and appointed producers who are subject to a written agreement allowing them to solicit business for you;
  2.   make or issue with respect to Policies or Renewals financial responsibility filings, certificates of insurance (except on forms provided by us), filings with any government agency, policies, endorsements, or renewal or cancellation notices;
  3.   disclose to our competitors or their agents information contained in our Underwriting Requirements; or

EXHIBIT "A" Pg. 1

4.  display or use, or instruct or permit others to display or use, any of our advertising, in whole or in part, or any of our Trademarks, or any words, phrases, pictures or graphics that are derived from or confusingly similar to the same, in any way, including, without limitation, in signs, advertisements (e.g., print, electronic, radio, television, etc.), promotional material, business cards, directory listings, domain names, Web sites or search engines.  If you violate this provision and such violation is not remedied to our satisfaction within fifteen (15) days after our written notice thereof, then in addition to any other remedies available to us at law or in equity, you agree that we shall have the right to do any or all of the following: (a) terminate this Agreement immediately upon written notice to your last known address; (b) obtain immediate injunctive relief against any such display or use; or (c) collect for each month in which such violation occurs liquidated damages equal to the greater of $1,000 or 2% of your previous year's total written premium with us.

D.  We have the authority to:
1.  expand, restrict, suspend or modify any part or all of your authority hereunder upon written notice to you;
2.  change our Underwriting Requirements by providing written notice or making the same available to you; and
3.  access and use Expiration Information only as described in Article V.

## Article III.    Duties

A.  You agree to:
1.  submit to us promptly all applications and premiums in any manner that we may specify, which may include, without limitation, electronic transmission;
2.  use all reasonable efforts to ensure that applications contain complete and accurate information;
3.  maintain an errors and omissions policy of insurance, covering you and each of your employees, with minimum limits of liability of at least $300,000 from an insurance company acceptable to us;
4.  comply with our Underwriting Requirements, as these may be changed by us pursuant to this Agreement;
5.  notify us promptly of any and all felony convictions involving your producers;
6.  present to each applicant or insured:
    a.  all notices that we may determine are legally necessary or legally prudent; and
    b.  all informational materials that we supply and ask you to provide;
7.  notify us in writing of any and all Policies and Renewals subject to premium financing arrangements, and the name and address of the premium financing company, promptly after you arrange for or learn of the same.  Nothing in this Agreement shall be construed as authorizing any premium financing arrangements if prohibited by the Underwriting Requirements;
8.  pay for all of your operating expenses, including, without limitation, personal license fees and taxes, and occupational or municipal license fees and taxes;
9.  comply with all applicable laws relating to the performance of this Agreement, including, without limitation, privacy, producer licensing and anti-steering laws;
10.  instruct each insured to immediately report directly to us all claims or losses, and immediately refer to us any inquiry or report concerning any claim or loss that you may receive;
11.  retain in an orderly fashion and for the period specified in the Underwriting Requirements, each of the following, to the extent applicable, with respect to Policies and Renewals:  all original signed applications, driver exclusions, selections and rejections of optional coverage, documents required by us in support of premium discounts, vehicle inspection reports, and powers of attorney.  You may retain electronically scanned documents in lieu of hard copy, provided that they are retrievable, durable, legible, unalterable and compatible with our systems.  Upon expiration or termination of this Agreement, or at any time upon our request, you agree to send to us all such documents or copies;
12.  allow us access to your facilities during business hours to review documents and records pertaining to Policies and Renewals, and assist in performing any such review;
13.  provide to us any information in your possession or control that we may request in connection with this Agreement, including, without limitation, a copy of all or any part of any file concerning any person insured under, or who has applied for, a Policy or Renewal with respect to that Policy or Renewal or application for the same;
14.  cooperate with us fully in our investigation of any claim or loss involving a Policy or Renewal;
15.  pay to us any and all amounts due hereunder within the time specified in the Underwriting Requirements or, if not specified, within thirty (30) days after receipt of our invoice; and
16.  refund unearned commissions to us at the same rate that such commissions were paid to you.

EXHIBIT "A" Pg. 2

B.  We agree to:
1.  issue all policy contracts and related forms;
2.  adjust or arrange for the adjustment of all claims;
3.  notify you of any material change to any Policy or Renewal;
4.  fulfill our obligations under our Underwriting Requirements, Policies and Renewals;
5.  pay you commissions as provided in this Agreement;
6.  comply with all applicable laws relating to the performance of this Agreement, including, without limitation, privacy, producer licensing and anti-steering laws;
7.  pay for all of our operating expenses, including, without limitation, personal license fees and taxes, and occupational or municipal license fees and taxes; and
8.  develop and provide or make available to you the Underwriting Requirements.

**Article IV.    Commissions**
A.  Subject to Article IV.B, we will pay you commissions on Policies and Renewals based on our applicable commission schedules in effect as of the inception date of each such Policy or Renewal, provided that:
1.  if required by law, you are licensed as an insurance producer;
2.  you have paid all amounts that are due and owing to us;
3.  you are the producer of record at the inception of the Policy or Renewal; and
4.  we have not terminated this Agreement pursuant to Article VI.C.
B.  We may change our commission schedules for Policies upon thirty (30) days prior written notice to you, and for Renewals upon ninety (90) days prior written notice to you. Notwithstanding the foregoing, we may change our commission schedules immediately upon written notice to you if we determine that it is legally necessary or legally prudent.

**Article V.    Expiration Information**
A.  You own all rights in Expiration Information, subject to the provisions of this Article. Without your prior written consent, we have no authority to, and agree that we will not:
1.  use any Expiration Information for the purpose of soliciting any Policy, Renewal, or other insurance product, except in accordance with Article V.C or Article V.E; or
2.  disclose Expiration Information to any third party, except for the purposes set forth in Article V.B.
B.  Notwithstanding the foregoing, we may:
1.  contact, or use any third party to contact, any person insured by us, formerly insured by us, or who has applied to be insured by us, to:
a.  provide customer service to any such person;
b.  process an agent of record change requested by any such person with respect to his or her Policy or Renewal or application for the same;
c.  request, receive or verify any information related to any such person with respect to his or her Policy or Renewal or application for the same;
d.  notify any such person of, and collect premiums due on, any Policy or Renewal;
e.  change the terms of any Policy or Renewal;
f.  provide information regarding insurance-related issues; or
g.  refer to another independent insurance producer any such person who is insured by us and who moves to a jurisdiction where you are not licensed or authorized to solicit our insurance products; and
2.  access, use and disclose information regarding Policies and Renewals, including Expiration Information, only for the purposes set forth in Article V.B.1, Section 502(e) of the Gramm-Leach-Bliley Act, market research, product development, regulatory compliance, or determining compliance with this Agreement.
C.  Unless otherwise notified by you in writing, we may, in our discretion, offer to renew Policies and Renewals written hereunder. When required by applicable law, we will offer to renew such Policies and Renewals. If we make such offers to renew, then subject to Article IV and Article V.E, we will continue to designate you as the producer and pay you commissions on each resulting Renewal in accordance with our then-current commission schedules.
D.  Until you fully discharge your financial obligations to us under this Agreement, we hereby retain and you hereby grant to us a security interest in your Expiration Information to the extent of any such financial obligation, and you agree to execute such documents as we may require to evidence, preserve or perfect this security interest.
E.  We will own all rights in Expiration Information and all expiration and renewal rights related to Policies and Renewals, and we will have no further obligation to pay you commissions hereunder only if:
1.  we terminate this Agreement pursuant to Article VI.C.1 due to your failure to timely pay all amounts due and owing to us;

-3-

EXHIBIT "A" Pg. 3

2. we terminate this Agreement pursuant to Article VI.C.2 because you have abandoned, or been deemed to have abandoned, your business; or
3. after termination of this Agreement, you fail to remit or make available funds due and owing to us when and as required by this Agreement, and such funds are not remitted or made available to us within ten (10) days after the date of our written notice to remit such funds.

**Article VI.    Term and Termination**
A.  This Agreement will become effective upon the Effective Date, and will continue in effect until terminated as provided in this Section.
B.  Unless otherwise required by law, we may terminate this Agreement at any time immediately upon the expiration of at least ninety (90) days' advance written notice to your last known address. Any such notice shall take effect on the later of ninety (90) days after the date of such notice, or the date for termination specified in the notice.
C.  Unless otherwise required by law, the advance notice required by this Section does not apply to us, and we may terminate this Agreement immediately upon written notice to your last known address, if:
    1.  you fail to remit or make available funds due and owing to us when and as required by this Agreement, and such funds are not remitted or made available to us within ten (10) days after the date of our written notice to remit such funds;
    2.  you abandon your business. You will be deemed to have abandoned your business if you cease to maintain a published telephone number or office location open to the public, or you change your telephone number or office location without providing prior written notice of the change to us and to your customers who are insured by us;
    3.  your producer license is suspended or revoked;
    4.  you engage in any fraudulent act against us or any applicant for or insured under a Policy or Renewal; or
    5.  you otherwise fail, in any material respect, to comply with this Agreement, and do not cure such failure, or such failure is incapable of being cured, within thirty (30) days after the date of our written notice thereof.
D.  You may terminate this Agreement at any time immediately upon written notice to us.

**Article VII.    Rights After Termination**
A.  Upon and after the expiration or termination of this Agreement:
    1.  all authority given to you by this Agreement ends;
    2.  we may notify any person insured under a Policy or Renewal of the expiration or termination of this Agreement;
    3.  you will promptly cease use of our advertising and Trademarks and return, at your expense, all of our manuals, forms, identification cards, signs, records, materials, applications, rate guides, Underwriting Requirements, software, and any and all other property that we have made available to you;
    4.  all in-force Policies and Renewals will continue to normal expiration, subject to their terms; and
    5.  in our discretion, we may pay you commissions on Renewals as a percentage of earned premium, rather than written premium.
B.  Notwithstanding the foregoing:
    1.  unless this Agreement is terminated by us pursuant to Article VI.C, and subject to Article II.D.1, you will continue to have authority to service Policies and Renewals outstanding after termination of this Agreement, you may retain those materials of ours that are necessary to exercise this authority, and we will provide you with access to information necessary to the exercise of this authority; and
    2.  at your request, we will provide to you copies of any Policy and Renewal contracts and related declarations pages in our possession or control. We shall provide the same either electronically or in hard copy, at our option.
C.  The following provisions will survive the termination of this Agreement: Article II.C.4; Article II.D; Article III.A.7 through Article III.A.16; Article III.B.1 through Article III.B.7; Article V; Article VII; Article VIII; Article IX; and Article X.

**Article VIII.    Fiduciary Responsibilities**
A.  You agree to hold in a fiduciary capacity for our benefit all funds received by you on our behalf, including, without limitation, premiums for insurance written under this Agreement. If mutually agreed between you and us, you will deposit such funds into a bank account for electronic transfer to us. If you fail to remit or make these funds available to us in a timely fashion, as required by this Agreement and the Underwriting Requirements, we will have a first lien on such funds. After the expiration or termination of this Agreement, you agree to continue to hold these funds in a fiduciary capacity for our benefit until you remit or make these funds available to us.

EXHIBIT "A" Pg. 4

B.   Notwithstanding anything in this Agreement to the contrary, we may set off any amounts due and owing to you under this Agreement or any other agreement between you and us, against any amounts due from you to us under this Agreement or any other agreement between you and us.

## Article IX.    Privacy Compliance

A.   We will provide a privacy notice to our insureds as required by law. We will notify you in writing if you are required to provide a privacy notice to applicants on our behalf.
B.   We may provide to you information regarding applicants, insureds or claimants that is not collected by you. The use and disclosure of such information is subject to the terms of our privacy notice and applicable privacy laws. Accordingly, you agree not to further disclose or use any such information, except as necessary to carry out the purpose for which we provide it, or as expressly authorized by the person to whom it pertains.
C.   You must take steps to ensure the security and confidentiality of information concerning applicants, insureds and claimants under Policies and Renewals. Subject to the provisions of Article III.A.11, this includes taking reasonable steps to destroy, or arrange for the destruction of, records containing such information that are no longer to be retained by you by shredding, erasing or otherwise modifying the personal information in those records to make it unreadable or undecipherable through any means.

## Article X.    Indemnification

A.   We will indemnify, defend, and hold you harmless for and from all liabilities, losses, damages, judgments, actions, and expenses, including reasonable attorneys' fees (collectively, "Losses"), that you sustain due to our negligence, any wrongful acts, errors or omissions on our part, or our failure to comply with the provisions of this Agreement or our Underwriting Requirements. This indemnification shall include, without limitation, any Losses that you sustain due to our use of consumer credit information if you have complied with our procedures for use or ordering of the same. You agree to immediately notify us when you learn of or receive any claim that you feel is covered under this Article. We shall have the right to participate, at our expense, in the investigation and defense of any such claim, and may, at our option, assume full defense of any action filed. If we assume the defense, we will not be liable to you for any cost of litigation, including, without limitation, court costs and attorneys' fees, that you incur subsequent to our decision to assume defense of any such action.
B.   You will indemnify, defend and hold us harmless for and from all Losses that we sustain due to your negligence, any wrongful acts, errors or omissions on your part, or your failure to comply with the provisions of this Agreement or our Underwriting Requirements. We agree to immediately notify you when we learn of or receive any claim that we feel is covered under this Article. You shall have the right to participate, at your expense, in the investigation and defense of any such claim.

## Article XI.    Miscellaneous

A.   Written notices under Article V.C and Article VI shall be provided in hard copy and shall be sent to the intended recipient's last known address. All other written notices required under this Agreement may be provided in writing, by email or other electronic means, such as fax, and the parties hereby consent to receive such notices via fax. Notices shall be effective: (1) upon receipt if hand delivered; (2) upon receipt or refusal to accept delivery if sent by certified mail; (3) three days after mailing if sent by U.S. first-class mail, postage prepaid; (4) the next business day after being sent by overnight delivery service; and (5) the next business day after machine-confirmation of successful transmission if sent by fax or email.
B.   This Agreement will be governed by and interpreted under the laws of the jurisdiction of your address for notices set forth in Article XII. Any provision of this Agreement that is contrary to the controlling law is hereby deemed to be amended to bring it in compliance with that law. The determination by a court of competent jurisdiction that any provision of this Agreement is unenforceable will in no way impair or affect the validity or enforceability of any other provision of this Agreement.
C.   This Agreement contains the entire understanding between the parties and supersedes all previous agreements between the parties, oral or written, with respect to any insurance product that you are authorized to solicit under this Agreement. Such agreements are hereby terminated by the mutual agreement of the parties as of the Effective Date of this Agreement.
D.   This Agreement may not be modified or amended except in writing that expressly refers to this Agreement and that is signed by both parties.
E.   This Agreement will be binding on and will inure to the benefit of the parties and their respective successors and permitted assigns. Except as provided in this Section, neither this Agreement nor any rights, duties or authority hereunder may be assigned or delegated by either party without the prior consent in writing of the other party. Upon written notice to you, we may assign this Agreement, or assign our rights or delegate our

duties under this Agreement, to any of our existing or future corporate affiliates. Upon written notice to us, you may assign your rights to receive commissions on Renewals to any duly licensed insurance producer, and upon receipt of such notice we will pay such commissions to the assignee, subject to our right to set off under Article VIII.B and the assignee's agreement to refund unearned commissions under Article III.A.16, and provided that the conditions of Article IV.A, other than Article IV.A.3, are met with respect to the assignee and such Renewals.

F.    The captions contained in this Agreement are for organizational purposes only and do not constitute a part of this Agreement.

G.    A party's failure to insist upon strict compliance with any of the provisions of this Agreement or the Underwriting Requirements will not constitute a continuing waiver of the right to insist upon such compliance.

H.    The rights and remedies of the parties under this Agreement are cumulative and in addition to any rights and remedies available to the parties at law or in equity.

I.    The relationship between the parties is that of independent contractors. You are responsible for the development and execution of your marketing plans, and all other aspects of the operation of your business and facilities, including, without limitation, hours of operation, advertising, utilities, taxes, hiring, employment and training. Neither party is responsible for the debts and liabilities of the other, and nothing shall be deemed to create or recognize any relationship other than that which is expressly described herein. This is not an exclusive Agreement.

| Article XII.      Effective Date, Territory, Identifying Information, etc. | |
|---|---|
| **Effective Date:** July 24, 2017 | **Authorized Insurance Product(s):** |
| **Territory:** CA | Personal Auto, Special Lines, Commercial Auto |
| **Insurance Producer Information** | **Insurance Company Information** |
| **Address for Notices:**<br>PO BOX 1870<br>PALM SPRINGS, CA 92263 | **Address for Notices:**<br>Corporate Compliance Officer<br>Progressive Casualty Insurance Company<br>6300 Wilson Mills Road<br>Mayfield Village, OH 44143<br><br>Fax:  1-888-316-0107<br>email: licensinghelp@progressive.com |

EXHIBIT "A" Pg. 6

| Article XII.    Effective Date, Territory, Identifying Information, etc. (Continued) | |
|---|---|
| **Insurance Producer Information (Continued)** | **Insurance Company Information (Continued)** |
| **Legal Name:** CALINSURED INSURANCE SERVICES INC<br><br>**Business Type:** Corporation | **Legal Names:** Progressive Casualty Insurance Co., Progressive Home Insurance Company, Progressive West Insurance Company and United Financial Casualty Company |

| Accepted and agreed: | |
|---|---|
| **Insurance Producer** | **Insurance Company(ies)** |
| **Name:** john p. ryan, Sr<br><br>**Title:** Branch Manager | **By:** _[signature]_<br><br>**Name:** Nathan W. Brown<br><br>**Title:** President, California Agency |

**Not Binding Unless Electronic Signature By Agency Principal Is Recorded In Progressive's Systems**

**Progressive**

The progressive representative Anna Harris terminated my business in
2016. This was primarily because one of my employees wrote policies on
her personal car and with one of the policies filed a claim. She wrote
several policies some cancelled and re written. Harris  reasoned that
she  writing a policy in order to file  a claim and writing several  policies and
cancelled  The last one in April 2016. She did nothing illegal or improper, I
told them that I personally did not write the policies and we should have her
own separate  logon id, They told me that had she had her own id I
would *not* have been cancelled or terminated.. This was a lie because
the  representative Anna Harrris  who visited the office numerous times
knew that Amber was writing the policies and taking all calls for auto
insurance. This was a technicality.  None the less she made the call even
she  knew my employee wrote policies for our office, but said I was the
responsible producer and the only listed producer listed on the computer
portal   even she said she knew Amber wrote the policies in the office and
took most calls.

. Also is 2016 M s Harris  would show up into the office,  unannounced at
times  and demanded to see file of 20 clients, If we couldn't produce files in
30 minutes time we would be put on probation or she would come back and
do it again. The people who handled the office the previous years moved
and were not there to immediately the find. client files on Progressive   Both
these are illegal and not in our contract.  We are not employees we are
independent contractors we pay our own office and employees. In 2016 We
were denied access to of client base and ability to write new business,. We
spent 1000 s of dollars over 12 years  on advertisement and branding
which we lost.  We were also *a partner producer* which we were one of
the  top producers in the state.  We are an independent broker, a 1099
employee, We are not employees, we are independent contractors but the
reps showed up like they owned our office  and our office demanding files
and treating us more like employees,



Complaint Affidavit:                    01-20-2021

Aegis terminated no reason given in June 2017 We were writing 15-20 per month. The broker representative Robbie Jackson was evasive and dismissive and no given a reason when asked but denied access to my agent portal and moreover did not pay me commissions but kept my clients many are still active. I was asked to submit paperwork for current licensing and e/o but was ignored, despite making numerous phone calls They were dismissive and was told Mr. Large was on vacation and would be returning soon.  It was not for lack of production or as I was top producing agent for the county of Riverside and San Bernardino. I wrote approximately 100 plus policies for them. Furthermore, the policies I did write were renewed but I was deleted as an agent I confirmed.



EXHIBIT "C"

DocuSign Envelope ID: 6CE82DDB-76AD-499F-B5D4-158217CB8E59



# INDEPENDENT PRODUCER AGREEMENT

**This Independent Producer Agreement** ("Agreement") is made this **22nd** day of **February, 2018** Between **Calinsured Insurance Services Inc.**

("Producer"), and Stillwater Insurance Services, Inc. (SER) hereinafter called "Company".

This Agreement, including the Attachments incorporated from time to time by reference, constitutes the entire agreement with respect to the subject matter hereof, and supersedes any prior agreement, whether oral or written, between the parties executing it.

A. **DEFINITIONS.** Throughout the Agreement, the definitions set forth below shall apply to both the singular and plural versions of the defined term.

1. **"Attachment"** is any Company distributed document:

    (a) intended to modify or alter the terms or conditions of this **Agreement** as permitted by the terms hereof; and

    (b) signed by an Authorized Representative.

Unless otherwise stated, Attachments are automatically incorporated into and become part of this Agreement as of their effective date.

2. **"Authorized Representative"** means the Chief Executive Officer or Chief Operating Officer of Company or an individual authorized in writing by the Board of Directors of Company.

3. **"Client"** means any individual or organization directly or indirectly owning one or more Products.

4. **"Company"** means **Stillwater Insurance Services, Inc.**

5. **"Insurance Company"** means each insurance company referenced in this Agreement.

6. **"Money"** means cash, or its equivalent, tendered as payment.

7. **"Producer"** means either a business entity or individual as the case may be, depending on how the Producer does business.

8. **"Product"** is any insurance product, or other offering identified in the Attachments.

9. **"Proprietary Material"** consists of all complete or partial copies of sales and rate information; computer software and related documentation; management and accounting records and documentation; business plans and operating strategies; Product information; and other information which relates to the business of Company.

10. **"Sub-Producer"** means any licensed individual, partnership, organization or corporation affiliated with Producer.

B. **GENERAL PROVISIONS.**

1. **Authority.** Producer shall be deemed an agent of Insurance Company with respect to the scope of express authority set forth in Section C below. Producer shall not hold itself out as possessing any authority not expressly granted herein. Where required by law, Company on behalf of Insurance Company shall appoint Producer as

EXHIBIT "D" Pg. 1

DocuSign Envelope ID: 6CE82DDB-76AD-499F-B5D4-158217CB8E59

Insurance Company's agent. Notwithstanding the foregoing, Producer's agreement hereunder is solely with Company in Company's role of General Agent for Insurance Company. Producer shall not be deemed to be Company's agent for any purpose. Producer has no authority to bind Company or Insurance Company on any insurance policy except as otherwise stated in the underwriting guidelines for the territories and lines of business set forth on Compensation Schedule.

2. **Withdrawal of Product.** Company or Insurance Company may withdraw, limit, restrict or change any Product, as it deems necessary.

3. **License.** Producer is responsible for securing and keeping in effect any licenses and for verifying the status of appointments for itself and any sub-producers required to represent Insurance Company. Producer agrees not to solicit for Products in any territory unless the proper license and appointment has been obtained and is reflected on the Compensation Schedule.

4. **Privacy.** To enable Company to comply with the privacy requirements of Title V of the Gramm-Leach-Bliley Act (PL 102-106) ("G-L-B") and any applicable state law more restrictive than G-L-B, Producer agrees not to use or to disclose any nonpublic personal information, as that phrase is defined by G-L-B, that it obtains from Company for any purpose that violates G-L-B or similar state privacy protect laws, or for any purpose that is not intended by the Agreement.

C. **PRODUCER DUTIES.** The Producer shall, in accordance with applicable Company rules:

1. **Procure and Submit Applications.** Solicit and procure applications, endorsements, binders and certificates of insurance for Products and submit all bound business as set forth on the Underwriting Guidelines.

2. **Signature.** Producer under no circumstance may sign on behalf of the applicant or named insured any forms related to the transaction of insurance.

3. **Collect Moneys.** Collect all Moneys as trust funds and immediately turn them over to Company without deduction. If Producer holds any Moneys it shall do so in a fiduciary capacity in an account compliant with applicable law. All Moneys collected are the property of Company.

4. **Service Clients.** Render all usual and customary services to Clients on all Products the Producer places with Company.

5. **Obtain Bond and Insurance.** Obtain and maintain in force:

    (a) a bond covering Company losses where applicable; and

    (b) errors and omissions insurance.

    The amount and nature of both must be satisfactory to Company. Producer shall provide Company with a Certificate of Insurance, satisfactory to Company. The Certificate shall provide that Company will be given thirty (30) days prior written notice in the event the coverage is modified or terminated. At Company's request, Producer will provide Company with a copy of its professional liability insurance policy.

6. **Protect Proprietary Materials.** Except where disclosure is required by law, preserve and protect the confidentiality of all Proprietary Materials to which the Producer may have access.

7. **Follow Insurance Company and Company Practices.** Consistent with the terms of this Agreement, adhere to and comply with all Insurance Company and Company practices, procedures, manuals, rules, instructions, and accounting procedures.

8. **Act Ethically.** At all times act in an ethical, competent and professional manner.

9. **Notify Insurance Company and Company.** To promptly notify Company of any claims, demands or suits against Company, Insurance Company, Producer, or its sub-agents that Producer receives.

EXHIBIT "D" Pg.2

DocuSign Envelope ID: 6CE82DDB-76AD-499F-B5D4-158217CB8E59

D. **LIMITATIONS.** The Producer shall not:

1. **Deliver Improperly.** Deliver any Product contrary to applicable rules and procedures.

2. **Extend Time.** Extend the time for payment of Moneys.

3. **Waive Obligations.** Waive, alter or extend any term, rate, obligation or condition of any Product.

4. **Incur Insurance Company and Company Expense.** Incur any expense, obligation or liability on account of Insurance Company and Company.

5. **Premium Finance.** Premium Financing of any kind is prohibited.

6. **Violate Laws.** Disobey or violate any federal, state, municipal and other applicable laws and regulations.

E. **COMPENSATION.**

1. **Governed by Attachments – Compensation Schedule.** The compensation of the Producer for all acts performed hereunder or otherwise during the term of this Agreement is specified in the Attachments. No compensation shall be payable until the Product on which compensation is claimed is actually issued and money is received. Compensation plans are variable as specified in the Compensation Schedule Attachments. Company may change from time to time the commission rates and/or terms of the Commission Schedule Attachments by giving 30 days prior written notice, or as required by state law.

2. **Compensation Continuance.** Company shall be obligated to pay compensation due under this Agreement while this Agreement is in effect and in accordance with its terms. If this Agreement terminates pursuant to Section G.1 below, and if at such time Producer is in possession of its expiration right as set forth in Section G.5 below, then Producer shall make a good faith effort to place Policies with another insurer. If Producer is unable to place all or any of the Policies after such good faith effort, then Company and

Insurance Company shall, upon request of Producer, renew any such Policy for an additional Policy period If additional renewals are required by applicable law then Company and Insurance Company shall comply with such requirement provided, however, that no further commission shall be paid with respect thereto to Producer. If this Agreement is terminated pursuant to Section G.2 or G.3 below, all compensation is terminated as the date of this Agreement is terminated.

3. **Producer Account.**

(a) Compensation payable under this Agreement shall be subject to an offset for any indebtedness the Producer has to Company and shall not be due until such indebtedness is satisfied. Such indebtedness shall include, but not be limited to:

(1) chargeback of any compensation paid or credited to the Producer, under this or any other contract, if the Moneys on which such compensation was based are not collected or are refunded by Company;

(2) Any amount paid by Company which, in Company's determination, resulted from any fraud, misrepresentation or other improper conduct on the part of the Producer or its sub-producers;

(3) Any expenses incurred by Company on behalf of the Producer;

(4) Any advances made by Company to the Producer.

(5) Any other amounts which the Producer owes Company.

(b) The Producer shall, upon request by Company, immediately repay in full any indebtedness. Any amount remaining unpaid shall be subject to collection by such legal means as are available to Company.

(c) For the purposes of this Section entitled **Producer's Account**, the

EXHIBIT "D" Pg.3

DocuSign Envelope ID: 6CE82DDB-76AD-499F-B5D4-158217CB8E59

term "Company" shall include insurance companies, affiliated companies, general agents and representatives of Company.

4. **Extending Credit.** Producer **shall** bear the sole risk for any credit it extends to Client for premium payments.

5. **Payment Procedure Changes.** The administrative rules, practices and procedures regarding compensation may be revised, modified or supplemented by Company from time to time.

6. **Change in Laws or Regulations.** Compensation on Products set forth in the Attachments may be adjusted without notice to the Producer to the extent required to comply with any change in any applicable laws or regulations.

F. **UNACCEPTABLE PRACTICES.** While this Agreement is in effect and after its termination, the Producer shall not directly or indirectly:

1. **Misuse Company Provided Material.** Use any Proprietary Material, leads or other property provided by Company to either service, solicit or attempt to solicit on behalf of a competing organization.

2. **Make Unauthorized Disclosure.** Except as required by law, disclose or release Proprietary Material unless specifically authorized in writing by an Authorized Representative.

G. **TERMINATION.**

1. **With Notice.** Company or the Producer shall have the right at any time to terminate this Agreement, with or without cause, by 30 days written notice to the other.

2. **Without Notice.** This Agreement may be terminated immediately upon written notice to the other party if either party:

   (a) engages in any fraud, misconduct, or abandons its business; or

   (b) becomes insolvent or declares bankruptcy; or

   (c) breaches any term, condition or obligation of this Agreement.

3. **Automatically.** This Agreement shall terminate automatically should the Producer's license be terminated or suspended.

4. **New Policies and Policy Changes.** After Producer issues or receives any notice terminating this Agreement. Producer will not issue binders or policies for new risks or change the terms or conditions of outstanding policies without the specific, written approval of Company. Producer may continue to provide usual and customary services on outstanding policies.

5. **Expiration Ownership.** Upon the termination of this Agreement:

   (a) if Producer has promptly accounted for and paid all premiums and other monies due Company, then:

      (1) Producer's records and the use and control of expirations, including expirations on direct billed business, shall remain the property of Producer; and

      (2) at Producer's request, Company shall provide Producer with a list of existing policies placed by Producer and currently in force through Company.

   (b) if Producer has not promptly accounted for and paid all premiums and other monies due Company, then:

      (1) Producer records, and the use and control of expirations, shall become the property of Company; and

      (2) Producer shall promptly forward the records to Company.

6. **Procedural Guidelines.** Company may, from time to time, adopt procedural guidelines applicable to Producer contract terminations. Adoption of these guidelines and any failure to observe them shall neither grant any rights to the Producer, nor impose any duties on the Company and shall not be deemed to limit the Company's rights as set forth in this Agreement.

SER 2013

EXHIBIT "D" Pg.4

Page 4 |

DocuSign Envelope ID: 6CE82DDB-76AD-499F-B5D4-158217CB8E59

7. **Return of Material.** Upon termination of this Agreement, the Producer shall immediately return to Company all: Proprietary Material, material identifying the Producer as a representative of Company, and property owned/provided by Company.

   (a) **Forfeiture.** If the Producer is notified in writing that the Producer or any of its sub-agents has committed a fraudulent or illegal act in conjunction with any transaction under this Agreement, then Company shall not be obligated to pay any compensation otherwise payable while this Agreement is in effect, or after its termination.

## H. MISCELLANEOUS.

1. **Financial Statements.** The books and accounts of Company will be accepted as full and final evidence in all matters relating to this Agreement. Financial statements issued to the Producer will be conclusively considered accurate if the Producer does not object, in writing, within 60 days following issue.

2. **Calculation Time Periods.** All calculations necessitated by the terms of this Agreement shall be based on Company records as of the end of any period involved. Where periods of time are referred to herein, such as "monthly" or "calendar year", it is understood that, where Company finds it necessary or desirable for processing or handling, it may use comparable periods of time commencing and ending other than on the exact day of the calendar period involved.

3. **Determination of Issuance and Product Type.** The determination to issue a Product and the type of Product to be issued shall be at Company's sole discretion.

4. **Products Included.** The provisions and conditions of this Agreement shall apply only to Products specifically identified in the Attachments.

5. **Independent Contractor.** The Producer is an independent contractor and not an employee. None of the terms of this Agreement shall be construed as creating an employer-employee relationship and, within Insurance Company's underwriting guidelines, the Producer shall be free to exercise the Producer's own judgment as to the persons from whom the Producer will solicit and the time, place and manner, and amount of such solicitation.

6. **Indemnification.**

   (a) Company shall defend and indemnify Producer from and against liability, including the costs of defense, settlements, and damages, imposed on it by law which are sustained by policyholders, and caused by the negligent acts or omissions of Company, provided Producer:

      (1) has not caused or contributed to such liability by his own acts or omissions;

      (2) notifies Company promptly of any claim or suit against Company or Producer the Producer receives;

      (3) allows Company to make any investigation, settlement or defense that Company deems prudent.

   (b) Producer shall defend and indemnify Company from and against liability, including the costs of defense, settlements, and damages, imposed on it by law which are sustained by Company, and caused by the negligent acts or omissions of Producer.

7. **Limitation of Actions.** Any claim by the Producer under this Agreement must be brought within one year of the occurrence of the claim.

8. **Deviation From Agreement Terms.** It is mutually agreed that if Company or Producer deviates from the provisions of this Agreement, even without protest by the other, such deviation shall not be held to have changed this Agreement or rights hereunder.

9. **Non-assignment.** This Agreement may not be assigned by the Producer. In addition, the Producer may not assign or pledge as collateral any compensation

EXHIBIT "D" Pg.5

DocuSign Envelope ID: 6CE82DDB-76AD-499F-B5D4-158217CB8E59

payable under this Agreement. Any attempt to assign this Agreement or its compensation shall be void.

10. **Headings.** Headings used in this Agreement are for reference purposes only and shall not be deemed a part of this Agreement.

11. **Controlling Law.** This Agreement is to be construed in accordance with the laws of the State of Florida. Venue to any dispute shall be the State and Federal Courts in Duval County, State of Florida. Prevailing party to any dispute shall be entitled to attorney's fees and costs.

12. **Severability.** In the event any provision of this Agreement is declared by a court to be invalid or unenforceable, the remaining provisions shall remain in effect.

13. **Order of Preference.** This Agreement and its Attachments shall be construed as being consistent with each other. When such construction is unreasonable, the order of preference shall be the Agreement and then Attachments to the Agreement.

14. **Sub-Producers.** Upon the written mutual consent of the Producer and Company, sub-producers may operate under the terms of this Agreement. The Producer shall be responsible for all actions of sub-producers and will insure that such sub-producer are properly licensed and appointed by Company as required by law. The Producer shall be responsible for the compliance of such individuals with all applicable terms of this Agreement and Products solicited by sub-producers shall be deemed for all purposes hereunder as Products issued by the Producer.

15. **Background Information.** Producer hereby authorizes any credit bureau, credit agency, law enforcement agency, insurer, bank, creditor, person, firm, corporation or governmental entity having any records, data or information concerning previous work experience, credit record, conviction information or financial history to furnish such records, data or information to Company or a representative of Company. Producer understands and agrees that this

authorization will remain valid so long as Producer is contracted with Company. A photocopy of the Authorization shall be considered as effective and valid as the original.

EXHIBIT "D" Pg.6

DocuSign Envelope ID: 6CE82DDB-76AD-499F-B5D4-158217CB8E59

**COMPANY AND PRODUCER ACKNOWLEDGE** that:

(a) in deciding whether or not to enter into this Agreement, the parties represent that they have read this Agreement and neither has relied upon any representations not contained herein,

(b) no representative of Company, except an Authorized Representative has the authority to agree to any modification of this Agreement, and

(c) to be effective, any attachment or amendment must be in writing and signed by an Authorized Representative.

The parties hereto have executed this Agreement, but the same shall not be binding upon Company until approved by an Authorized Representative at the Home Office of Company.

<u>**PRODUCER**</u>:

_____
(Printed or Typed Producer Name)

John Ryan
_____
(Print or Type Name of Producer Authorized Representative)

┌─ DocuSigned by:
By: John Ryan
_____
(Signature of Producer Representative)

Title: manager
_____

                              U1J
Stillwater Producer Code _____

<u>**COMPANY REPRESENTATIVE**</u>:

Jami Byrd
_____
(Printed or Typed Company Representative Name)

┌─ DocuSigned by:
By: Jami Byrd
_____
(Signature of Company Representative)

Title: Licensing Manager
_____

EXHIBIT "D" Pg.7

DocuSign Envelope ID: 6CE82DDB-76AD-499F-B5D4-158217CB8E59

# ADDENDUM A

## COMPENSATION SCHEDULE

PERSONAL LINES PRODUCER AGREEMENT

As set forth in the Underwriting guidelines Producer is authorized to bind policies for the lines of business listed below and the Company shall pay Producer commission based on the following table:

| Line of Business | Insurance Carrier* | Territory | New Business** | Renewal Business** |
|---|---|---|---|---|
| Automobile | SIC | CA | 12% | 10% |
| Homeowners | SIC/SPC | CA | Tiered [2] | Tiered [2] |
| Dwelling Fire | SIC | CA | Tiered [2] | Tiered [2] |
| Earthquake | SIC | CA | 10% | 10% |
| Excess Liability | SIC | CA | 15% | 15% |
| Boat Owners | SIC | CA | 15% | 15% |

* SIC – Stillwater Insurance Company
SPC – Stillwater Property and Casualty Insurance Company

** Rate of Commission applies to Gross Premium and may vary only as specified.

Home and Property Quadrant Commission Program[2]:

|  | New Business | Renewal Business |
|---|---|---|
| Quadrant 1: | 15% | 15% |
| Quadrant 2: | 15% | 15% |
| Quadrant 3: | 15% | 15% |
| Quadrant 4: | 17% | 15% |

Rolling 12 Month Look-Back Quadrant Qualifiers:
Eligible lines:  All Stillwater Home (HO3, HO4, HO5, HO6) and Dwelling Fire (DP1, DP2, DP3) policy types will be used in calculating your commission Quadrant.  Commission Quadrants are determined monthly and will apply to the following month's commissions.  Renewal policies are included in calculation the month renewal premium is received.
All Eligible policies and written premium volume will be calculated on a Rolling 12 month basis.

| Quadrant | Annualized Qualifying New Business Home and Property Policies | AND | Qualifying Home and Property Policies in Force (PIF) – OR– Qualifying Written Premium (WP) |
|---|---|---|---|
| 1 | < 24 | AND | < 100 PIF –AND– < $50,000 WP |
| 2 | < 24 | AND | ≥ 100 PIF –OR– ≥ $50,000 WP |
| 3 | ≥ 24 | AND | < 100 PIF –AND-- < $50,000 WP |
| 4 | ≥ 24 | AND | ≥ 100 PIF –OR–  ≥ $50,000 WP |

Stillwater Insurance Services, Inc. – Addendum A Commission Schedule – Page 1 of 1

DocuSign Envelope ID: 6CE82DDB-76AD-499F-B5D4-158217CB8E59

# ADDENDUM B

## PERSONAL LINES PRODUCER AGREEMENT
## INTERNET ACCESS, USAGE AND PASSWORD SECURITY

### INTERNET

Producer is granted the right to use Company's Internet site(s) and in consideration of being granted that right, Producer will retain all forms representing applications, exclusions, rejections and/or requests for coverage, payment and binding as set forth in the Underwriting Guidelines under any policy or renewal written hereunder. All policies processed via the Internet must have premium payment submitted as provided for in the Underwriting Guidelines. All business is subject to the Underwriting Guidelines.

### PASSWORD SECURITY

Producer will be issued a temporary password and shall only disclose the password to employees or agents of the Producer who need to know the password for the purpose of using the Company's Internet site(s).

a) The Company is not liable if you do not properly secure your password or if you choose to share your password with anyone else.
b) We strongly recommend that you do NOT share your password with anyone.
c) If you believe or know that your password has been compromised, change your password immediately.
d) If you suspect any unauthorized activity has occurred on your account, you must contact us immediately.

EXHIBIT "D" Pg.9

DocuSign Envelope ID: 6CE82DDB-76AD-499F-B5D4-158217CB8E59

# ADDENDUM C

## COMMERCIAL LINES PRODUCER ADDENDUM

### ERRORS AND OMISSIONS INSURANCE

Agency must maintain errors and omissions coverage as well as add Stillwater Insurance Services, Inc. to the E&O policy.  Errors and Omissions Professional Liability Insurance must be maintained at all times during the term of this agreement containing coverage's, exclusions, limits, and deductible amounts that are satisfactory to company, in its sole direction: provided however, that the limit of the policy shall be at least One Million Dollars ($1,000,000) per claim. Company shall have the right to require that Agent furnish proof of such coverage from time to time.

### PREMIUM FINANCING IS STRICTLY PROHIBITED

Premium financing is prohibited.   Company offered installment programs are the only acceptable installment billing programs.

### No Binding Authority

As set forth in the Underwriting guidelines Producer is not authorized to bind policies for the lines of business listed below.  The Company reserves the sole right to bind and affect coverage.

COMPANY SHALL PAY PRODUCER A COMMISSION BASED ON THE FOLLOWING TABLE:

| Line of Business | Ins. Carrier* | Territory | New Business* | Renewal** |
|---|---|---|---|---|
| Business Owners-BP | SIC | CA | 15% | 15% |

\*    SIC – Stillwater Insurance Company
     SPC – Stillwater Property and Casualty Insurance Company

\*\*    Rate of Commission applies to Gross Premium excluding all fees and may vary only as specified on an addendum hereto.

EXHIBIT "D" Pg.10

**Affidavit regarding STILLWATER**                    **01-21-2021**

On July 2018 I was an independent insurance broker for Stillwater
Insurance company. We wrote homeowners insurance for them and other
products. We write a policy for personal umbrella policy for myself the
previous year, my attorney submitted a request for payment for a case for
me without my knowledge. My client and personal friend Gregg Juarez
wrote several checks to me and the daughter tried to get the money back
after Mr. Juarez died. The daughter had been excommunicated but after he
died and was not part of Mr. Juarez life. She showed up to claim
inheritance from his estate.  Our Broker rep Steve Jensen asked for basic
details. Turns out the claim was denied payment and also, they cancelled
my policy and terminated my contract to write policies and denied me
access to the computer portal, Since I did nothing wrong and nothing ever
came of the case, I felt this was unjustified and excessive treatment. I was
never notified or given a reason of their reassuming. They kept all policies
and never paid a commission after the date.



EXHIBIT "E"

John Ryan / GPSI
PO Box 1870
Palm Springs, CA 92263

United States District Court ...
3470 Twelfth Street
Riverside, CA 92501-3801

RECEIVED
CLERK, U.S. DISTRICT COURT

MAR 29 2021



1000

92501





U.S. POSTAGE PAID
FCM LG ENV
YUCCA VALLEY, CA
92284
MAR 27 21
AMOUNT
$2.00
R2305K141250-05